Peter Strojnik, Esq. 6464
THE LAW FIRM OF PETER STROJNIK
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail: *Strojnik@aol.com*
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CONSUMER PROTECTION CORPORATION, an Arizona Corporation,<br><br>                    Plaintiff,<br><br>    vs.<br><br>STOCK RX, a fictitiously named defendant whose true legal identity is not known by Plaintiff; MEDEFILE INTERNATIONAL, INC., a Nevada Corporation; MEDEFILE, INC., a Nevada Corporation; THE VANTAGE GROUP, LTD. a/k/a VANTAGE GROUP, LTD., a Delaware Corporation; DIGITALSPEED COMMUNICATIONS, INC., a Pennsylvania Corporation; INNOVATIVE COMMUNICATIONS, INC., a Pennsylvania Corporation; ADAM PASTERNACK a/k/a ADAM HARRIS PASTERNACK, an individual; JANE DOE PASTERNACK, an individual; ABC DEFENDANTS 1-50,<br>                    Defendants. | NO.  2008-cv-01853-PHX-ROS<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO MEDEFILE'S AND VANTAGE GROUP'S MOTION TO DISMISS**<br><br>**REQUEST FOR PERSONAL JURISDICTION DISCOVERY AND HEARING** |

-1-

## SUMMARY OF RESPONSE

"[Consumer Protection Corporation] was organized for the primary purpose of cleaning up fraud in the small cap securities market". Exhibit 1.  One of the fraudulent activities in the small cap securities market is the pump and dump scheme of the type alleges in the Complaint, see Complaint at 25-27.  In the case of Medefile and Vantage, the pump and dump scheme involved the use of illegal faxes sent throughout the unsuspecting securities market to fraudulently induce the investors to purchase MDFI stock. Id. at 35-36.

The Congress of the United States has been helpful in CPC's quest to stamp out illegal fax pump-and-dump schemes.  Congress made a legislative determination that the appropriate penalty for violating 47 U.S.C. § 227 was $500 per violation or, in the court's discretion, $1,500 per willful violation.  47 U.S.C. § 227(b)(3). In doing so, Congress established a penalty designed not only to compensate for the actual damages and unquantifiable harm, but also to deter the offensive conduct. *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.,* 203 Ariz. 94, 50 P.3d 844 (App. 2002); *Texas v. American Blastfax, Inc.,* 121 F. Supp. 2d 1085, 1090-91 (W.D. Tex. 2000); *Kenro, Inc. v. Fax Daily, Inc*., 962 F. Supp. 1162, 1166 (S.D. Ind. 1997). The penalty is not so disproportionate to actual damages as to violate due process. *American Blastfax*, 121 F. Supp. 2d at 1090; *Kenro*, 962 F. Supp. at 1166.

Having provided for a private right of action and having decided the appropriate penalty, Congress did not preclude the use of class actions to obtain redress for violations. *ESI Ergonomic Solutions*. See 47 U.S.C. § 227. Rule 23 allows for class actions to "enhance the efficacy" of any private right of action provided by law. *Hawaii v. Standard Oil Co. of Cal*., 405 U.S. 251, 266 (1972). Class action relief is unavailable only if Congress expressly excludes it, *Califano v. Yamasaki*, 442 U.S. 682, 699-700 (1979), and Congress has done so in some statutes. See, e.g., 15 U.S.C. § 6614 (2000) (limiting Y2K class actions); 29 U.S.C. § 732(d)

(Supp. 1999) (barring designated agency class actions); 15 U.S.C. § 2310(e)(2000) (restricting consumer warranty class actions). Congress provided no express exclusion of class action relief in 47 U.S.C. § 227.

Because of the potential for devastating damages, fax broadcasters have moved off shore and the companies commissioning illegal fax transmission have sought anonymity behind fictitious entities. In light of the amount of damages, both the fax broadcaster and the entity commissioning the fax blast are highly incentivized to keep their identities secret; however, through diligent research, expensive investigations, and a thorough study of applicable laws, CPC has determined – and so alleged in its Complaint – that Defendants violated the TCPA.

Defendants argue that this Court does not have personal jurisdiction over Vantage and that Plaintiff's Complaint fails to state a cause of action under the TCPA. Contrary to this sweeping statement, Paragraphs 35 of 76 paragraphs of the Complaint alleges, **"On or about June 23, 2008, Defendants [including Vantage] send the Exhibit 1 Fax to Plaintiff and the members of the Class, Exhibit 1, in violation of TCPA."**

This Court enjoys personal jurisdiction over the defendants by virtue of the 9th Circuit "effects test", *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1486 (9 Cir. 1993). Using the "but for" test of jurisdiction, *Brink v. First Credit Res.*, 57 F. Supp.2d 848, 861 (D. Ariz. 1999), "but for" Defendants' broadcast of the illegal fax to Arizona, the cause of action would not have arisen.

Plaintiff prays that the Court deny Defendants' motion in its entirety. Alternatively Plaintiff seeks leave to amend the Complaint. On the matter of personal jurisdiction, Plaintiff alternatively seeks leave to commence personal jurisdiction discovery and a hearing.

This Response is more fully supported by the following Memorandum of Points and Authorities that is by this reference incorporated herein.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**12(b)(2) Legal Standard**

Defendant Vantage claims that the Complaint against it should be dismissed because Vantage has no contacts with the State of Arizona. In support of its Claim, vantage submits the Declaration of Lyle Hauser, the CEO of Vantage. Vantage is the principal shareholder of Medefile. Lyle Hauser is also the son of Medefile's CEO, Milton Houser.

When a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff must only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168 (9th Cir. 2005). Under this standard, the plaintiff must provide evidence that, if believed, would support jurisdiction over the defendant. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F. 3rd 1112, 1129 (9th Cir. 2003). Unless <u>directly</u> controverted, a plaintiff's version of the facts is to be taken as true. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

The essence of Mr. Hauser's Declaration is a general denial of the allegations against Vantage. Mr. Hauser does not "directly controvert" the jurisdictional allegations of the Complaint, see *Doe v. Unocal Corp.*, supra. The Complaint, on the other hand, is quite precise and specific in its allegations against Vantage:

1. Vantage is the majority shareholder of Medefile International – owning 51.4% of MDFI (¶19);

2. Vantage is also the principal financier of Medefile International (¶20);

3. The President and Chief Executive Officer of Medefile International is Milton Hauser (¶21);

4. The President and Chief Executive Officer of Vantage is Milton Hauser's son, Lyle Hauser (¶22);

5. On November 15, 2007, Medefile International and Vantage entered into a debt conversion agreement whereby Vantage agreed to convert the aggregate principal amount of $2,100,000 of its indebtedness into an aggregate of 14 million shares of MDFI (¶23);

6. Defendants [including Vantage] broadcasted the Exhibit 1 Fax to named Plaintiff and the members of the Class on or about June 23, 2008 in violation of the TCPA (¶24);

7. Defendants [including Vantage], their co-conspirators, aiders and abettors, caused to be transmitted the Exhibit 1 Fax in order to manipulate the MDFI stock as to both value and volume (¶ 41)

8. Defendants [including Vantage] took advantage of the market manipulation (¶42);

9. Medefile International's officers, directors and insiders, including Vantage, who were aware of the market manipulation and those who took advantage of it, had a duty to disclose the market manipulation to the securities market (¶43);

10. Plaintiff has identified two classes of stock manipulators who benefit by the illegal stock manipulation through Unsolicited Fax broadcasts in issue here (¶44)

    a. The Company whose stock is being promoted by the Exhibit 1 Fax. In the matter at hand, this class of beneficiaries consists of Medefile International; and/or

    b. The insiders and or shareholders of the company whose stock is being promoted by the Exhibit 1 Fax. In the matter at hand, this class of beneficiaries consists of Medefile International's insiders, officers, directors and/or shareholders, including Vantage.

11. Upon information and belief, Medefile International, Medefile International's officers, directors and insiders, including Vantage, provided advice and encouragement with respect to the transmission of the Exhibit 1 Fax. (¶45)

12. Upon information and belief, Medefile International and Medefile International's officers, directors and insiders, including Vantage, assisted and/or participated with respect to the transmission of the Unsolicited Faxes. (¶46)

Clearly, Mr. Hauser did not "directly contravene" the allegations in the Complaint. Therefore, Plaintiff's uncontroverted allegations prove a prima facie case of jurisdiction. In addition, Plaintiff submits the Declaration of Peter K. Strojnik, independent counsel, as more fully set out in the attached Exhibit 2, further supporting the jurisdictional allegations.

Alternatively, Plaintiff respectfully requests that Plaintiff be permitted to conduct personal jurisdiction discovery and that the Court schedule this matter for a hearing.

**12(b)(6) Legal Standard and Application to Facts**

This Court aptly stated the legal standard for a Rule 12(b)(6) Motion to Dismiss in *Mason v. State,* No. CIV-01-2439-PHX-ROS (D.Ariz. 03/27/2003)

> A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." [citations]"The federal rules require only a `short and plain statement of the claim showing that the pleader is entitled to relief.'" *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 248 (9th Cir. 1997) (quoting Fed.R.Civ.P. 8(a)). "The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." Id. at 249 (quotation marks omitted). "All that is required are sufficient allegations to put defendants fairly on notice of the claims against them." *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991) (citing Conley, 355 U.S. at 47; 5 C. Wright & A. Miller, Federal Practice & Procedure § 1202 (2d ed. 1990)). Indeed, though "`it may appear on the face of the pleadings that a recovery is very remote and unlikely[,] . . . that is not the test.'" *Gilligan*, 108 F.3d at 249 (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974)). "`The issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Id.

The allegations in the Complaint are that (1) On June 23, 2008, Defendants broadcast between 200,000 and 1 million copies of the offending fax in violation of the TCPA (¶24); (2) Defendants violated the TCPA ( ¶58); (3) Defendants "and/or their agents used a telephone facsimile machine, computer, or other device to send unsolicited advertisements to telephone

facsimile machines to Plaintiff and the members of the Class: (¶59); (4) Defendants "transmitted or caused to be transmitted unsolicited faxes to telephone machines themselves, or had a high degree of involvement in the transmission of the unsolicited faxes to telephone facsimile machines" (¶60). Defendants knew that the transmitted faxes were advertisements, Id.; ; Defendants participated in the preparation of their content of the fax, Id.; Defendants provided or obtained the fax telephone numbers of Plaintiff and the members of the Class, Id.; Defendants and members of the Class have no established business relationship, Id.; Defendants compensated a third party for transmitting the unsolicited faxes to telephone facsimile machines, Id.; and/or Defendants knew that Plaintiff and the members of the Class had not authorized the faxes' transmission by prior express invitation or permission, Id.

The Complaint makes a prima facie case of a closely held group controlling Medefile. This group includes Lyle Houser, CEO of Vantage, Vantage, a 51+% owner of Medefile Stock, and Milton Houser, Lyle Houser's father acting as the CEO of Medefile.

Defendants argue that Plaintiff has failed to allege sufficient violation of the TCPA against them. They cite to *Gene and Gene, LLC v. Bioplay,* 541 F. 3rd 318, 322 (5th Cir 2008) for the proposition that the allegation of a third party broadcast is insufficient to bind the principal. Actually, *Bioplay* does not hold so; *Bioplay* stands for the proposition that a class certification in a TCPA case is proper (as here) where a defendant obtains all of the fax recipients' fax numbers from a single purveyor of such information based on the applicable federal regulations, i.e., 47 C.F.R. § 64.1200(a)(3)(ii)(B). The regulation indicates that if a "sender obtains the facsimile number from a [commercial database], the sender must take reasonable steps to verify that the recipient agreed to make the number available for

distribution". On the other hand, the class certification may be improper where individualized determinations of consent would have to be discerned (not here).

TCPA violation may be primary or secondary. Primary responsibility rests with the broadcaster and the entity on whose behalf the fax was broadcast[1]. Secondary responsibility rests with conspirators and aiders and abettors. The allegations regarding both the primary and secondary liability are clearly expressed in the Complaint.

---

[1] FCC has stated that "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the [TCPA]" and that, therefore, fax broadcasters who operate like common carriers "are not liable for compliance with this rule," 10 F.C.C.R. 12,391, 12,407 (1995); In the Matter of Fax.com, Inc., 17 F.C.C.R. 15,927, 15,935 (2002) ("Fax.com Notice of Apparent Liability"), the agency also has made clear that this exemption for a fax broadcaster only exists "in the absence of 'a high degree of involvement or actual notice of an illegal use and failure to prevent such transmissions,'" Fax.com Notice of Apparent Liability, 17 F.C.C.R. at 15,935. See also 47 C.F.R. § 64.1200(a)(3)(ii) ("A facsimile broadcaster will be liable for violations ... if it demonstrates a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent such facsimile transmissions."); In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 F.C.C.R. 8752, 8780 (1992) (discussing common-carrier liability under the TCPA and applying a standard of "a high degree of involvement or actual notice" and failure to act).

Moreover, in the few cases that deal with such fax-broadcasting companies, courts have extended liability to the company that transmits the unsolicited faxes, as well as the entity on whose behalf the fax is sent. See, e.g., *Texas v. American BlastFax*, 164 F. Supp. 2d 892, 896-97 (W.D. Tex. 2001); *Covington & Burling*, 2003 WL 21384825 at *8. In the *American Blastfax* case, the court found such a company liable under the TCPA because "[its] business center[ed] around using a fax machine to send unsolicited advertisements -- the precise conduct outlawed by the TCPA." 121 F. Supp. 2d at 1089. The court further opined that the company, American Blastfax, "[wa]s more than a common carrier or service provider [because it] maintain[ed] and use[d] a database of recipient fax numbers, actively solicit[ed] third party advertisers and presumably review[ed] the content of the fax advertisements it sen[t].... Blastfax [wa]s far more than a mere conduit for third party faxes." Id. at 1089-90. The court then concluded that "[i]t would circumvent the purpose of the TCPA to exempt Blastfax from potential liability on the theory that it plays no role in sending the advertisements at issue." Id. at 1090. The FCC, in an Order of Forfeiture against Fax.com, endorsed the district court's conclusion "that a fax broadcaster that serves as 'more than a mere conduit for third party faxes' is liable under the TCPA." *In the Matter of Fax.com, Inc.*, 19 F.C.C.R. 748, 755 n.36 (2004).

See also *Kopff v. Battaglia*, No. 05-798 (D.D.C. 03/29/2006)

**The Complaint Alleges That The Fax Was an Unsolicited Advertisement**

The Complaint alleged "unsolicited facsimile advertisement) 4 times (¶¶10, 28, 32, 51); "unsolicited fax" 12 times (Caption, 2, 10, 11, 44, 46, 50, 53, 56, 60, 65, 66); and "advertisement" 7 times (10, 28, 51, 55, 56, 59, 60). In addition, the fax is appended as Exhibit to the Complaint. It is clearly an advertisement and it is clearly a fax.

**Declaratory Judgment**

Defenants next argue that Declaratory Judgment should be dismissed because it is duplicative of the TCPA action. But a plaintiff may plead alternative and even inconsistent theories in its Complaint. *Harris Technical Sales, Inc. v. Eagle Test Systems, Inc.*, No. CIV 06-02471-PHX-RCB (D.Ariz. 09/12/2008)

**Civil Conspiracy and Aiding and Abetting**

Defendants claim that Plaintiff cannot recover on these claims because it does not prove them in the Complaint. A motion to dismiss for failure to state a claim will be denied unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Falkowski v. Imation Corp.,* 309 F.3d 1123, 1132 (9th Cir. 2002), citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). "Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." Fed.R.Civ.P. 8(e). These rules "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

Plaintiff's Complaint contains such a short and plain statement of the claim.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons Plaintiff requests that the Court deny Defendants' Motion to Dismiss or, in the alternative, grant leave to amend the Complaint, permit personal jurisdiction discovery and schedule the matter for a hearing.

RESPECTFULLY SUBMITTED this 4th day of November, 2008.

                                            PETER STROJNIK, P.C.

                                            _____
                                            By:  Peter Strojnik
                                            Attorney for the Plaintiff