WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Consumer Protection Corporation, | No. 08-1853-PHX-ROS |
| Plaintiff, | **ORDER** |
| vs. | |
| Stock RX, et al., | |
| Defendants. | |

**BACKGROUND**

On September 3, 2008, Plaintiff filed a Complaint in state court alleging unsolicited faxes were sent by Defendants to Plaintiff and other putative class members in violation of the Telephone Consumer Protection and Junk Fax Prevention Acts ("TCPA") (Doc. 1 Ex. 1). Between $100 million and 1.5 billion dollars in damages are alleged. On October 8, 2008, Defendants Vantage Group, Ltd. ("Vantage"), Medefile International, Inc. ("Medefile Int'l"), and Medefile, Inc. ("Medefile") removed the action to this Court based on diversity jurisdiction (Doc. 1). On October 28, 2008, Vantage moved to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2); Medefile and Medefile Int'l moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)

1  (Doc. 12).[1]  Plaintiff responded on November 4, 2008, and Defendants replied on November

2  14, 2008 (Docs. 15, 18).  For the following reasons, the Motion will be granted.

3

4  **DISCUSSION**

5  **I. Personal Jurisdiction**

6  **A. Standard**

7          A federal court sitting in diversity applies the personal jurisdiction rules of the forum

8  state and the Due Process Clause of the Fifth Amendment. *Scott v. Breeland*, 792 F.2d 925,

9  927 (9th Cir. 1986).  The Arizona and federal rules are identical, as Arizona's long arm

10  statute "provides for personal jurisdiction co-extensive with the limits of federal due

11  process." *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997) (citing *Batton*

12  *v. Tenn. Farmers Mut. Ins. Co.*, 736 P.2d 2, 4 (Ariz. 1987)); *see also* Ariz. R. Civ. P. 4.2(a).

13  "Due process requires that nonresident defendants have certain minimum contacts with the

14  forum state, so that the exercise of personal jurisdiction does not offend traditional notions

15  of fair play and substantial justice." *Doe*, 112 F.3d at 1050 (citing *Int'l Shoe Co. v. Wash.*,

16  326 U.S. 310, 316 (1945)).  Specific jurisdiction may be exercised if the defendant has

17  purposefully availed itself of the forum, the claim arises out of defendant's forum-related

18  activities, and the exercise of jurisdiction is reasonable.  *See Data Disc, Inc. v. Sys. Tech.*

19  *Assoc.'s, Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977).  If a defendant's activities in a state are

20  "'substantial' or 'continuous and systematic,' general jurisdiction may be asserted even if the

21  cause of action is unrelated to those activities."  *Haisten v. Grass Valley Med.*

22  *Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986) (internal citations omitted).

23          Once a defendant has moved to dismiss for lack of personal jurisdiction, the burden

24  of proving jurisdiction falls on the plaintiff.  *See Butcher's Union Local No. 498, United*

25  *Food and Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986). If the

26

27          [1] Defendants Digitalspeed Communications, Inc., Adam Pasternack, Jane Doe Pasternack, Innovative
Communications, Inc., and Stock Rx were dismissed by stipulation on January 5, March 11, and March 26,
28  2009 (Docs. 31, 36, 38).

court adjudicates the motion without a hearing, plaintiff need only make a *prima facie* showing of adequate personal jurisdiction to survive the challenge. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Rio Prop.'s, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

When determining the sufficiency of a *prima facie* showing, "[t]he court may consider evidence presented in affidavits." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). The court must assume as true all uncontroverted facts in the complaint and must interpret all evidentiary disputes in plaintiff's favor. *See Schwarzenegger*, 374 F.3d at 800 ("[U]ncontroverted allegations in the complaint must be taken as true . . . Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor."). However, "the plaintiff cannot simply rest on the bare allegations of its complaint" if controverted by evidence incorporated into defendant's motion. *Id.* (internal citation omitted); *see also Data Disc, Inc.*, 557 F.2d at 1284 (A court "may not assume the truth of allegations in a pleading which are contradicted by affidavit."). All evidence must be admissible to be considered. *See Travelers Cas. & Sur. Co. of Am. v. Telstar Const. Co., Inc.*, 252 F. Supp.2d 917, 923 (D. Ariz. 2003); *see also Bach v. McDonnell Douglas, Inc.*, 468 F. Supp. 521, 525-26 n.7 (D. Ariz. 1979).

**B. Specific Jurisdiction**

The Ninth Circuit has developed a three-part test for determining the sufficiency of specific jurisdiction, which is:

> A. The non-resident defendant "purposefully direct[ed] his activities or consummate[d] some transaction with the forum or resident thereof; or perform[ed] some act by which he purposefully avail[ed] himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;"

> B. The claim "arises out of or relates to the defendant's forum-related activities;"

> *and*

> C. "[T]he exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

1 | *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th

2 | Cir. 2006) (*en banc*).  This analysis is not rigid and a plaintiff may satisfy the test even with

3 | a lesser showing of minimum contacts – prongs (A) and (B) – through a greater showing of

4 | reasonableness – prong (C). *See Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182,

5 | 1188-89 (9th Cir. 2002).

6 |         Because Plaintiff has not established purposeful availment, specific jurisdiction cannot

7 | be established over Vantage.  *See Yahoo! Inc.* at 1206 (because the three prongs of the

8 | specific jurisdiction analysis are conjunctive, a complete failure to show purposeful

9 | availment will undermine a claim of specific jurisdiction).  "Purposeful availment requires

10 | that the defendant engage in some form of affirmative conduct allowing or promoting the

11 | transaction of business within the forum state." *Shute v. Carnival Cruise Lines*, 897 F.2d

12 | 377, 381 (9th Cir. 1990) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d

13 | 834, 840 (9th Cir. 1986)), rev'd on other grounds in *Carnival Cruise Lines, Inc. v. Shute*, 499

14 | U.S. 585 (1991).  "A non-resident defendant's act of soliciting business in the forum state

15 | will generally be considered purposeful availment if such solicitation results in contract

16 | negotiations or the transaction of business." *Id.*  However, a defendant may not "be haled

17 | into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the

18 | unilateral activity of another party or third person." *Burger King v. Rudzewicz*, 471 U.S. 462,

19 | 475 (1985) (internal citations omitted).

20 |         The Complaint alleges all Defendants, including Vantage, engaged in business activity

21 | directed at Arizona by sending unsolicited faxes to Arizona residents and otherwise

22 | conducting business in the state (Doc. 1 Ex. 1 at ¶¶ 11(a), 11(d)-(e), 24, 35, 41, 45-46, 59-

23 | 60).  The declaration of Lyle Hauser, Vantage's Chief Executive Officer and President,

24 | refutes that Vantage participated in the transmission of the faxes or has otherwise conducted

25 | business in Arizona (Doc. 12, Ex. 1).  Plaintiff's jurisdictional allegations are thus

26 | controverted.  Plaintiff attempts to rebut the Hauser declaration with the declaration of Peter

27 | K. Strojnik (Plaintiff's Counsel) in which Strojnik asserts Vantage participated in sending

28 | the unsolicited faxes and conducts business in Arizona (Doc. 15 Ex. 2).  However, the

Strojnik declaration is made only upon "information and belief" and gives no indication that Strojnik has personal knowledge, based on admissible evidence, of the relevant jurisdictional facts asserted (Doc. 15 Ex. 2 at ¶ 1). Accordingly, the Strojnik declaration is not proper for consideration. *See* Fed. R. Evid. 602; *Travelers Cas. & Sur. Co. of Am., Inc.*, 252 F. Supp.2d at 923; *Bach*, 468 F. Supp. at 525-26 n.7. Failing to rebut the Hauser declaration, Plaintiff cannot show purposeful availment and thus specific jurisdiction over Vantage cannot be established.

**C. General Jurisdiction**

        A nonresident defendant may be subjected to the general jurisdiction of a foreign court if the defendant has "substantial and continuous" contacts with that state. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1173 (9th Cir. 2006). The substantial and continuous contacts analysis is not "a precise checklist . . . or definitive litany of factors," but rather requires a totality of the circumstances inquiry. *Id.* at 1172. Such an inquiry examines "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there" as well as the defendant's "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets." *Id.* In the Ninth Circuit, general jurisdiction is disfavored. *See Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*, 1 F.3d 848, 851 n.2 (9th Cir. 1993) (The Ninth Circuit "regularly [has] declined to find general jurisdiction even where the contacts were quite extensive.").

        Here, Plaintiff does not allege uncontroverted facts which link Vantage's business activities to Arizona. In the Response, Plaintiff merely restates the general jurisdiction allegations of the Complaint, that Vantage has transacted or solicited business in Arizona (Doc. 1 Ex. 1 at ¶ 11). Although these allegations are repeated in the Strojnik declaration, as discussed above, it is not admissible evidence and thus fails to rebut the Hauser declaration (Doc. 15 Ex. 2 at ¶¶ 6(e), (i)). Moreover, Plaintiff has not alleged Vantage is incorporated in Arizona, has designated an agent for service of process in Arizona, has an

1  office in Arizona or any other fact suggesting Vantage has "substantial and continuous

2  contacts" with the state. *Tuazon,* 433 F.3d at 1173. Given the totality of the circumstances,

3  general jurisdiction is not a basis for asserting personal jurisdiction over Vantage.

4

5  **D. Jurisdictional Discovery**

6         Failing to establish personal jurisdiction over Vantage, Plaintiff, in the alternative,

7  seeks leave to conduct jurisdictional discovery. Federal trial courts are "vested with broad

8  discretion" to allow jurisdictional discovery, which "may appropriately be granted where

9  pertinent facts bearing on the question of jurisdiction are controverted or where a more

10 satisfactory showing of the facts is necessary." *Data Disc, Inc.*, 557 F.2d at 1285 n.1. While

11 Plaintiff controverts facts pertaining to personal jurisdiction over Vantage, the controversy

12 is based on Plaintiff's speculation and not on any potential evidence which Plaintiff

13 reasonably believes, or has reasonably established, it could discover. Plaintiff's request for

14 discovery will thus be denied and the claims against Vantage will be dismissed for lack of

15 personal jurisdiction.

16

17 **II. Failure To State A Claim**

18 **A. Standard**

19        Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") permits challenge of a

20 complaint for "failure to state a claim for relief upon which relief can be granted." A court's

21 inquiry "is limited to the allegations in the complaint, which are accepted as true and

22 construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d

23 580, 588 (9th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) ("Rule 8(a)(2)") provides

24 the yardstick for determining the sufficiency of a complaint in a Rule 12(b)(6) analysis.

25 According to Rule 8(a)(2), a proper claim for relief need only contain "a short and plain

26 statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2) has been

27 interpreted to require that a plaintiff's "[f]actual allegations ... be enough to raise a right of

28 relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1  The *Bell Atlantic* standard requires a plaintiff produce more than "labels and conclusions, and

2  a formulaic recitation of the elements of a cause of action." *Id.* at 554-56, 570.  While legal

3  conclusions may provide a framework for the complaint, "they must be supported by factual

4  allegations." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009); *accord Moss v. U.S. Secret

5  Service*, -- F.3d --, 2009 WL 2052985 (9th Cir. 2009).  "Specific facts are not necessary;"

6  however, a plaintiff must allege enough facts to "give the defendant fair notice of what the

7  ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 127 S.Ct. 2197, 2200

8  (2007) (*per curiam*) (internal citation omitted).

9      The defendant bears the burden of proving plaintiff has failed to state a claim. *See e.g.,*

10 *Hedges v. United States*, 404 F.3d 744, 750 (3rd. Cir. 2005); *Bangura v. Hansen*, 434 F.3d

11 487, 498 (6th Cir. 2006); James Wm. Moore, *2 Moore's Federal Practice* § 12.34[1][a] at

12 12-73 (2008 ed.).

13     Because Vantage will be dismissed for lack of personal jurisdiction, only the Rule

14 12(b)(6) challenge by Medefile Int'l and Medefile will be considered.

15

16 **B. Count One: TCPA Junk Fax Violation**

17     To prevail on a TCPA junk fax claim, a plaintiff must show the defendant: (1) used

18 a fax machine, computer or other device to send a facsimile; (2) the facsimile was

19 unsolicited; and (3) the facsimile was an advertisement. *See* 47 U.S.C. § 227(b)(1)(C).  The

20 Complaint pleads two categories of possibly unlawful conduct: primary liability conduct, the

21 act of transmitting unsolicited faxes to Plaintiff and the class members, and secondary

22 liability conduct, a variety of conduct which aided the primary actor in transmitting the

23 unsolicited faxes (Doc. 1 Ex. 1 at ¶¶ 58-60).  The general allegations of the Complaint

24 suggest all Defendants committed both primary and secondary liability conduct (Doc. 1 Ex.

25 1 at ¶¶ 35, 41).  However, the general allegations are contradicted by the Complaint's

26 specific factual assertions, which state that one group of Defendants (Stock Rx, Adam

27 Pasternack, Innovative Communications and Digitalspeed Communications) transmitted the

28 unsolicited faxes and that a second group (Vantage, Medefile, and Medefile Int'l) aided,

encouraged and otherwise participated in the fax transmissions (Doc. 1 Ex. 1 at ¶¶ 24, 28-34, 40-46).  No additional facts are alleged suggesting Vantage, Medefile, or Medefile Int'l transmitted the unsolicited faxes.  Given the internal inconsistency and failure to plead facts specifically suggesting  Vantage, Medefile, or Medefile Int'l transmitted the unsolicited faxes, the only reasonable interpretation of the Complaint is to apportion primary liability on Stock Rx, Pasternack, Innovative and Digitalspeed for sending the faxes and secondary liability on Vantage, Medefile, and Medefile Int'l for otherwise participating in the fax transmissions.  *See Ashcroft*, 129 S. Ct. at 1950 ("Determining whether a complaint states a plausible claim for relief . . .  requires the reviewing court to draw on its judicial experience and common sense.").

Defendants argue the Complaint fails to state a TCPA junk fax claim against Medefile and Medefile Int'l because § 227(b)(1)(C) does not provide for secondary liability and only the actual transmitter of the faxes may violate the statute.[2]  Plaintiff responds that, under the TCPA, "[s]econdary responsibility rests with conspirators and aiders and abettors" (Doc. 15 at 8).  While Plaintiff is correct that § 227(b)(1)(C) liability has been extended to certain parties that did not actually transmit an unsolicited fax, this is an exception to the general rule and has been limited to those who pay a third party to transmit illegal faxes ("advertisers").  *See e.g. Tex. v. Am. Blastfax, Inc.*, 121 F. Supp.2d 1085, 1090 (W.D. Tex. 2000); *Accounting Outsourcing, LLC. v. Verizon Wireless Personal Comm'cns, L.P.*, 329 F. Supp.2d 789, 806 (M.D. La. 2004); *In the Matter of Fax.com, Inc.*. 19 F.C.C.R. 748, 755 n.36 (2004).  While the Complaint states "Stock Rx was paid the sum of $10,000 for the broadcasting of the Exhibit 1 Fax," no facts are alleged suggesting Medefile or Medefile Int'l were advertisers and paid to transmit the faxes (Doc. 1 Ex. 1 at ¶ 24).  The Complaint does contain general advertiser allegations, stating "Defendants compensated a third party for

---

[2] Defendants also argue the Complaint does not sufficiently allege the faxes are advertisements, pursuant to 47 U.S.C. § 227(a)(5).  Because the Complaint fails to allege Medefile and Medefile Int'l sent or paid for faxes pursuant to § 227(b)(1)(C), the question of whether  the faxes were advertisements need not be reached.

transmitting the unsolicited faxes" (Doc. 1 Ex. 1 at ¶ 60(e)).  However, this allegation is contained within a general list of examples outlining all Defendants' illegal conduct.  By listing the advertiser allegation as an example of all the alleged misconduct committed by all Defendants, Plaintiff is implicitly stating that some Defendants paid a third party to transmit the unsolicited faxes while other Defendants did not.  Otherwise, Plaintiff would have alleged, without qualification, that Defendants (including Medefile and Medefile Int'l) compensated a third party for transmitting unsolicited faxes.  Given the qualification and the uncertainty concerning which Defendants actually paid to transmit the unsolicited faxes, the advertiser allegation is too vague to infer that Medefile and Medefile Int'l, rather than any other Defendant(s),  paid to transmit the unsolicited faxes. *See Erickson*, 127 S.Ct. at 2200 (While "[s]pecific facts are not necessary," a plaintiff must allege enough facts to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests.").

Insofar as Plaintiff argues to expand the scope of § 227(b)(1)(C) liability to include the provision of aid or encouragement, the argument is not persuasive.  The text of § 227(b)(1)(C) limits liability to a party which "use[s] any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement," that is, the party which transmits the fax.  To further the purpose of the statute, the Federal Communications Commission and the federal courts have created a narrow exception to this general rule by expanding liability to include advertisers.  *See e.g. Accounting Outsourcing, LLC.*, 329 F. Supp.2d at 806 ("Interpreting the TCPA to exempt either fax broadcasters *or advertisers* would effectively allow advertisers to make an end-run around the TCPA's prohibitions.") (emphasis added).[3]  However, neither Congress nor other precedential authority has interpreted the TCPA to expand junk fax liability to include aiders and abetters or indicated that such an expansion would further the purposes of the Act.

---

[3] In such circumstances, both the transmitter (or broadcaster) and the advertiser would be liable, or, if the transmitter innocently sent the offending faxes, only the advertiser would be liable. *See* 47 C.F.R. § 64.1200(a)(3)(vii), (f)(6).

1    Moreover, the canons of statutory construction generally counsel against such an expansion.

2    *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182

3    (1994) ("[W]hen Congress enacts a statute under which a person may sue and recover

4    damages from a private defendant. . . there is no general presumption that the plaintiff may

5    also sue aiders and abettors.").  Plaintiff cites no authority to the contrary.  Accordingly, the

6    Court will not expand the scope of TCPA junk fax liability to include aiders and abettors.

7    *Accord Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp.2d 736, 746 (D.

8    Md. 2008) ("It appears that no court has yet passed on the question of whether the Telephone

9    Consumer Protection Act encompasses a cause of action for aiding and abetting. It is clear,

10   however, that the statutory language does not specifically provide for such liability. *See* 47

11   U.S.C. 227(b)(3). In light of the plain language of the statute, and the holding in *Central*

12   *Bank,* this Court will not imply expanded liability under the TCPA for aiding and abetting.").

13
        The TCPA junk fax claim against Medefile and Medefile Int'l will thus be dismissed.
14

15   **C. Counts Two, Three, and Four**

16       Counts Two, Three and Four (Declaratory Judgment, Civil Conspiracy, and Aiding

17   and Abetting) are not independent causes of action, but rather are derivative of the TCPA

18   junk fax claim. To state a claim under Counts Two, Three or Four, Plaintiff must have

19   properly stated the Count One TCPA cause of action.  Because Plaintiff has failed to state

20   the Count One TCPA cause of action, the other three claims must also fail.

21

22

23

24   **III. Leave to Amend**

25

26       In response to the Motion to Dismiss, Plaintiff has requested leave to amend the

27   Complaint.  According to Federal Rule of Civil Procedure 15(a)(2) ("Rule 15(a)(2)"), the

28   Complaint may only be amended "with the opposing party's written consent or the court's

leave." Rule 15(a)(2) further instructs trial courts to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Plaintiff will thus be given a limited amount of time to amend the Complaint.

Accordingly,

**IT IS ORDERED** Defendants' Motion to Dismiss (Doc. 12) is **GRANTED**.

**FURTHER ORDERED** Plaintiff shall file a motion to amend the complaint, including a proposed amended complaint, within **TEN DAYS** of this Order, in the absence of which the Complaint (Doc. 1) will be dismissed, without further Order of the Court, and the case will be terminated.

DATED this 20th day of August, 2009.

_____
Roslyn O. Silver
United States District Judge

- 11 -