**THE LAW FIRM OF PETER STROJNIK**
**Attorneys at Law**
**Suite 1401**
**3030 North Central Avenue**
**Phoenix, Arizona 85012**
**(602) 297-3019**

Peter Kristofer Strojnik AZBN 026082 CABN 242728
pksesq@aol.com
Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| CONSUMER PROTECTION CORPORATION, an Arizona Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> MEDEFILE INTERNATIONAL, INC., a Nevada Corporation; MEDEFILE, INC., a Nevada Corporation; ABC DEFENDANTS 1-50, <br> Defendants. | NO.  2:08-cv-1853-PHX-ROS <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND FOR DAMAGES ARISING OUT OF TRANSMISSION OF UNSOLICITED FAXES - 47 U.S.C. § 227 AND** <br><br> **FOR DECLARATORY JUDGMENT; AND** <br><br> **FOR CIVIL CONSPIRACY; AND** <br><br> **FOR AIDING AND ABETTING** <br><br> **REQUEST FOR TRIAL BY JURY** |

Plaintiff alleges, on Plaintiff's behalf and on behalf of a class of persons defined below, as follows:

## THE PARTIES, JURISDICTION AND VENUE

1) Plaintiff CONSUMER PROTECTION CORPORATION is an Arizona Professional Corporation authorized to and conducting business in Maricopa County, State of Arizona.

2) STOCK RX is a fictitious entity whose name appears on the unsolicited faxes, Exhibits 1, (Exhibit 1 Fax or Unsolicited Fax) manipulating the publicly traded stocks of Defendants Medefile International, Inc. ("Medefile International").  Medefile International is authorized to and conducts business in the State of Nevada and across the United States of America.

3) Defendant MEDEFILE INTERNATIONAL, INC. is a Nevada corporation.  Its stock trades publicly in the over the counter securities market in the United States under the symbol OTC BB: MDFI.OB ("MDFI").

4) Defendant MEDEFILE, INC. ("Medefile") is a Nevada Corporation.  It is authorized to and conducts business in the State of Nevada and across the United States of America.

5) Medefile and Medefile International shall be collectively referred to herein as "Defendants."

6) ABC DEFENDANTS 1-50 are the persons and/or entities who broadcasted the unsolicited facsimile advertisements at issue and/or conspired with and aided and abetted the named defendants to illegally manipulate MDFI stock by issuing unsolicited faxes to Plaintiff and the members of the Class.

7) This Court has personal jurisdiction over Defendants Medefile and Medefile International by virtue of the following facts:

   a) Medefile and Medefile International conduct systematic and continuous business in the State of Arizona and across the United States through the sale of electronic devices used to store medical records;

   b) Medefile and Medefile International caused at least one unsolicited fax to be send to at least one recipient in the State of Arizona;

c) The State of Arizona has interest in providing a forum for its residents, including the Plaintiff and the Class identified herein; and

d) It would be extremely burdensome for Plaintiff to access another forum; and

e) Upon information and belief, Defendants Medefile and Medefile International continuously and systematically sent unsolicited faxes to the State of Arizona; and

f) Defendants Medefile and Medefile International purposefully availed themselves of economic benefits and resources of the State of Arizona in conducting their business here; and

g) Defendants Medefile and Medefile International may be hailed in court here under the liberal "effects" test in this tort action; and

h) Defendants Medefile and Medefile International did and should have foreseen being hailed to Court in the State of Arizona.

8) This Court has original jurisdiction over this matter by virtue of the Class Action Fairness Act, 28 U.S.C. § 1332(d) requiring minimum diversity and the amount in controversy exceeding 5 million dollars. Actual diversity exists between Plaintiff and Defendants.

9) The venue is proper in this Court pursuant to 28 U.S.C. §§1391 *et seq.*

## FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

10) Plaintiff realleges all allegations heretofore set forth.

11) Medefile International has reported a net loss of $591,756 for the quarter ended March 31, 2008 and $4,160,846 for the year ended December 31, 2007 and had an accumulated deficit of $10,120,206 as of March 31, 2008 and $9,528,450 as of December 31, 2007.

12) Medefile International admits in its Securities and Exchange Commission Filings that there is a substantial doubt that it can continue operations.

13) Medefile International admits that they will need additional investments in order to continue operations.

14) Medefile International's independent accountants have expressed doubts about the former's ability to continue without additional capital becoming available.

15) Vantage is the majority shareholder of Medefile International – owning 51.4% of MDFI.

16) Vantage is also the principal financier of Medefile International.

17) The President and Chief Executive Officer of Medefile International is Milton Hauser.

18) The President and Chief Executive Officer of Vantage is Milton Hauser's son, Lyle Hauser.

19) On November 15, 2007, Medefile International and Vantage entered into a debt conversion agreement whereby Vantage agreed to convert the aggregate principal amount of $2,100,000 of its indebtedness into an aggregate of 14 million shares of MDFI.

20) On information and belief, prior to June 23, 2008, Medefile and Medefile International solicited the services of Slingshot Technologies Corporation ("Slingshot"), which is a Pennsylvania Corporation owned and operated by Adam Harris Pasternack.  Slingshot's primary business is the broadcast of unsolicited facsimiles on behalf of its customers.

21) On information and belief, prior to June 23, 2008, Medefile and Medefile International purchased fax broadcasting services from Slingshot, and Medefile and Medefile International paid Slingshot to transmit a copy of an unsolicited fax to thousands of persons across the United States of America.  A copy of the unsolicited fax is affixed hereto as Exhibit 1.

22) On the bottom of the Exhibit 1 Fax is a toll free telephone number, which is owned by Digitalspeed Communications, Inc. ("Digitalspeed"). Digitalspeed is a Pennsylvania Corporation also owned and operated by Adam Harris Pasternack. Slingshot and Digitalspeed have an agreement whereby Slingshot refers its customers to Digitalspeed for the provision of the toll free removal number at a "reduced" rate. On information and belief, Medefile and Medefile International paid Digitalspeed at the "reduced" rate for the removal number on the Exhibit 1 Fax. The removal number has been issued to Digitalspeed.

23) On information and belief, on June 23, 2008, Slingshot broadcasted the Exhibit 1 Fax to the named Plaintiff and the members of the Class at the direction and after receipt consideration from Medefile and Medefile International. The Exhibit 1 Fax states on its face that Stock Rx was paid the sum of $10,000.00 for the broadcasting of the Exhibit 1 Fax, but Stock RX is a fictitious company. On information and belief, Medefile and Medefile International paid this sum to Slingshot and Digitalspeed.

24) Upon information and belief, the cost for each fax to be sent is between 1 and 5 cents. This means that Defendants Medefile and Medefile International paid Slingshot to broadcast between 200,000 and 1 million copies of the Exhibit 1 Fax. Pursuant to the TCPA, Defendants Medefile and Medefile International are liable in statutory damages for the sum of $500 and $1,500 for each fax, for a total sum in this instance of between $100 million and $1.5 billion.

25) Between the dates of June 19, 2008 and June 24, 2008, the price of MDFI rose 18 cents ("Pump" Period).

26) Between the dates of June 25, 2008 and July 1, 2008, the price of MDFI fell 31 cents ("Dump" Period).

27) The Pump Period and Dump Period of the MDFI stock were rises and falls that MDFI had not experienced for several years.

28) The purpose of the Exhibit 1 Fax was to manipulate MDFI stock in the securities market.

29) The broadcasting of the Exhibit 1 Fax manipulated MDFI stock.

30) Medefile and Medefile International were aware of the market manipulation of the MDFI stock.

31) Medefile, Medefile International, their co-conspirators and aiders and abettors caused to be transmitted the Exhibit 1 Fax in order to manipulate the MDFI stock as to both value and volume.

32) Defendants Medefile and Medefile International took advantage of the market manipulation.

## CLASS ACTION ALLEGATIONS

33) Plaintiff realleges all allegations heretofore set forth.

34) This is a proposed class action suit brought on behalf of Plaintiff and on behalf of other persons and entities who received an unsolicited fax advertisement to their telephone facsimile machine by Defendants.

35) Plaintiff claims and alleges that Defendants' use of the telephone facsimile machine, computer, or other device to send an unsolicited facsimile advertisement to a telephone facsimile line violates the TCPA.  This cause of action is specifically authorized pursuant to Arizona Revised Statutes § 44-1482(C).

36) Plaintiff brings this action in Plaintiff's individual capacity as well as on behalf of a class of persons and entities similarly situated (the "Class").

37) Plaintiff operates a business located in Phoenix, Maricopa County, State of Arizona, and receives and has received unsolicited faxes that cause it damages due to the loss of its paper and toner, the temporary loss of use of its facsimile machine and computer, the potential loss of business, and a violation of its right to privacy.

38) As a direct and proximate result of Defendants' conduct, Plaintiff and the members of the Class suffered damages due to the loss of paper and toner, the temporary loss of use of their facsimile machine and the potential loss of business while their facsimile machines were receiving the Exhibit 1 Fax.

39) This Class Action is brought and may be maintained pursuant to Rule 23, Arizona Rules of Civil Procedure.  Plaintiff seeks to represent a Class comprised of:

> All persons who received an unsolicited advertisement promoting
> Medefile International, Inc. or MDFI stock via unsolicited facsimiles

40) This action is properly brought as a class action pursuant to Rule 23, A.R.C.P., for the following reasons:

a)  The Exhibit 1 Fax states on its face that Stock Rx was paid the sum of $10,000.00 for its service of broadcasting the Exhibit 1 Fax.  Upon information and belief, a fax distribution firm sends out a fax at a cost of between 1 and 5 cents per fax. This means that Defendants sent out between 200,000 and 1,000,000 Unsolicited Faxes.

b)  The class is so numerous that joinder of all members is impracticable; and

c)  There are questions of law or fact common to the class, to wit:

i)   Whether Defendants violate the TCPA when sending the Exhibit 1 Fax; and

ii)  Whether the facsimiles that are the same or similar to the Exhibit 1 Fax constitute "unsolicited advertisements" under TCPA; and

iii) Whether Plaintiff and the members of the Class are entitled to damages under the TCPA; and

iv)  Whether Plaintiff and the members of the Class are entitled to treble damages under the TCPA; and

v)   Whether Plaintiff and the members of the Class are entitled to injunctive relief under the TCPA; and

vi)  Whether Plaintiff and the members of the Class are entitled to declaratory relief.

d)   The claims or defenses of the representative parties are typical of the claims or defenses of the Class because all members of the Class received the same Unsolicited Fax; and

e)   The named Plaintiff will fairly and adequately protect the interests of the class because:

i)   Plaintiff seeks no relief that is antagonistic to the other members of the Class; and

ii)  Plaintiff has no established business relationship with any Defendant or any potential additional Defendant; and

iii) Plaintiff shall vigorously pursue the claims of the Class; and

iv)  Plaintiff has retained counsel with 28 years of experience in litigation matters and competent in representing the interests of the Class; and

v)   Plaintiff's counsel has expended significant efforts in this matter and is learned in tracking down the sources of Unsolicited Faxes.

f) A Rule 23 Class Action is superior to any other available means for the adjudication of this controversy in the following particulars:

i) This action will cause an orderly and expeditious administration of the Class's claims; and

ii) The economies of time, effort and expense will be fostered; and

iii) Uniformity of decisions will be ensured at the lowest costs and with the least expenditures of judicial resources.

g) Because of the size of the Class, the expense and burden of individual litigation makes it impractical for the individual members of the Class to individually seek redress for the wrongs done to them.  Plaintiff believes that the members of the Class, to the extent they are aware of their rights against Defendants, would be unable to secure counsel to litigate their claims on an individual basis because of the relatively small nature of the individual damages warranted and/or the value of individual injunctive relief.  Hence, a class action is the only feasible means of recovery for the members of the Class. Furthermore, without a class action, the members of the Class will continue to suffer damages and Defendants will continue to violate federal law, retaining and reaping the proceeds of their wrongful marketing practices.

h) Plaintiff does not anticipate any difficulty in management of this action because the evidence proving Defendants' violations of the TCPA is ascertainable through discovery.  The identities of the members of the Class are known to Defendants, and damages can be calculated from Defendants' records. This action poses no unusual difficulties that would impede its management by the Court as a Class action.

**COUNT ONE**
(Violation of the Telephone Consumer Protection Act)
(47 U.S.C. § 227 *et seq*)

41) Plaintiff realleges all allegations heretofore set forth.

42) Defendants violated the Telephone Consumer Protection Act of 1991 and the Junk Fax Prevention Act of 2005 ("TCPA"), 47 U.S.C. § 227 *et seq.* case ("TCPA") by hiring and paying consideration to Slingshot to illegally transmit the Exhibit 1 Fax to Plaintiff and the members of the Class in violation of the TCPA, and by hiring and paying consideration to Digitalspeed for the provision of the removal number placed at the bottom of the Exhibit 1 Fax pursuant to *Tex v. Am. Blastfax, Inc*., 121 F. Supp.2d 1085, 1090 (W.D. Tex. 2000); *Accounting Outsourcing, LLC v. Verizon Wireless Personal Comm'cns, L.P.*, 329 F. Supp.2d 789, 806 (M.D. La. 2004); *In the Matter of Fax.com, Inc*., 19 F.C.C.R. 748, 755 n.36 (2004).

43) Plaintiff and the members of the Class have no established business relationship with Defendants, Slingshot or Digitalspeed, and had no relationship at the time the Exhibit 1 Fax was broadcasted.

44) Plaintiff and the members of the Class never gave explicit or implicit permission to Defendants, Slingshot or Digitalspeed to receive the Exhibit 1 Fax.

45) The Exhibit 1 Fax is an unsolicited advertisement in accordance with *Consumer Protection Corporation v. Joytoto, Inc. et al*, 2:08-cv-1983-PHX-JAT (D. Ariz. 07/16/2009) at Doc. 20.

46) As a direct and proximate result of said conduct, Plaintiff and members of the Class have sustained damages.  Under the TCPA, Plaintiff and each member of the Class are entitled to

injunctive and declaratory relief enjoining Defendant's unlawful conduct, as well as incidental statutory damages.

47) As a result of said conduct, Plaintiff and members of the Class suffered property damage, and Defendant has invaded their privacy.

**COUNT TWO**
(Declaratory Judgment)

48) Plaintiff realleges all allegations heretofore set forth.

49) This count is brought pursuant to the Arizona version of the Uniform Declaratory Judgment Act, A.R.S. § 13-1821 *et seq* and the Federal Declaratory Judgment Act 28 U.S.C. § 2201 *et seq*.

50) A justiciable controversy exists between Plaintiff and the members of the Class and Defendants regarding the legality of Defendants' acts complained of herein.

51) Defendants claim, or may claim, that their conduct in hiring Slingshot and Digitalspeed to broadcast the unsolicited facsimiles does not violate the TCPA.

52) Defendants claim, or may claim, that they obtained express invitation or consent to send the faxes to Plaintiff and the members of the Class.

53) Defendants claim, or may claim, that they enjoyed an established business relationship with Plaintiff and the members of the Class.

54) Plaintiff claims that Defendants' practices violate the TCPA.

**COUNT THREE**
(Civil Conspiracy)

55) Plaintiff realleges all allegations heretofore set forth.

56) Defendants agreed among themselves, Slingshot and Digitalspeed to engage in a course of conduct involving a violation of 47 U.S.C. § 227.

57) Defendants, Slingshot and Digitalspeed agreed to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages to named Plaintiff and the members of the Class.

58) Named Plaintiff and the members of the Class have been damaged by acts committed by Defendants pursuant to the civil conspiracy above.

59) Defendants' conduct was intentional and premeditated, intended to unjustly benefit Defendants at the expense of the named Plaintiffs and the members of the Class, entitling named Plaintiff and the members of the Class to punitive damages in an amount sufficient to deter these Defendants and others similarly situated from repeating or committing the wrongful acts complained of herein, but in no event less than $5,000,000.00 each.

## COUNT FOUR
(Aiding and Abetting)

60) Plaintiff realleges all allegations heretofore set forth.

61) Defendants aided and abetted one another, Slingshot and Digitalspeed as follows:

a) The sender of the Exhibit 1 Fax committed a violation of the TCPA; and

b) Defendants knew that the sender of the Exhibit 1 Fax violated the TCPA; and

c) Defendants substantially assisted or encouraged the sender of the Exhibit 1 Fax in the following non-exclusive actions:

   i) They provided the information contained in the Exhibit 1 Fax; and

ii) They provided the opportunity to the sender of the Exhibit 1 Fax to violate the TCPA;

and

iii) They sought the benefits of the Exhibit 1 Fax; and

iv) They paid for the sending of the Exhibit 1 Fax; and

v) They accepted the benefits of the Exhibit 1 Fax.

62) Named Plaintiff and the Class have been harmed by Defendants' aiding and abetting.

63) Defendants are responsible to named Plaintiff and the Class as aiders and abettors for the same amount of damages as the principal violators of the TCPA.

64) Defendants' conduct was intentional and premeditated, intended to unjustly benefit Defendants at the expense of named Plaintiff and the members of the Class, entitling named Plaintiff and the members of the Class to punitive damages in an amount sufficient to deter these Defendants and others similarly situated from repeating or committing the wrongful acts complained of herein, but in no even less than $5,000,000.00 each.

## REQUEST FOR TRIAL BY JURY

65) Plaintiff requests a trial by a jury on all issues triable by a jury.

## RELIEF SOUGHT

Plaintiff prays for relief as follows:

a) For Certification of the Class pursuant to Rule 23 of the Arizona Rules of Civil Procedure; and

b) For extraordinary, equitable, and/or injunctive relief as permitted by law to ensure that Defendants will not continue to send unsolicited faxes; and

c) For judgment in the amount of $500.00 for each member of the Class for incidental statutory damages for each individual unsolicited fax received from Defendants; and

d) For judgment in the amount equal to three times the damages to Plaintiff and each member of the Class under the TCPA, to wit, $1,500.00 for each member of the Class; and

e) For an award of punitive damages not to be less than $5,000,000; and

f) For a declaration that Defendants have violated the TCPA because they failed to obtain express invitation or consent to send the subject facsimiles to Plaintiff  or the Class; and

g) For a declaration that Defendants violated the TCPA because they did not enjoy an established business relationship with Plaintiff or the members of the Class; and

h) For judgment for costs and fees incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs, as provide by law; and

i) For such other and further relief as the Court may deem just and proper.


RESPECTFULLY SUBMITTED this 2nd day of September, 2009.


THE LAW FIRM OF PETER STROJNIK



_____
Peter Kristofer Strojnik
Attorney for Plaintiff

06/23/2008 06:49 AM P. 1 of 1



## Stock RX.
*"Bringing you the best in medical microcap stocks"*

# MEDEFILE INTERNATIONAL, INC. *(MDFI.OB)* LAUNCHES NATIONAL MEDIA CAMPAIGN WITH **CNBC. CNN. FOX AND MSNBC.**

### WHO IS MDFI

MedeFile International, Inc. (OTCBB:MDFI) is a technology and services organization specializing in the organization, acquisition and management of medical records and images. MedeFile creates a single, highly secure system which makes its members medical records accessible 24 hours per day.

| MedeFile International, Inc. (OTCBB: MDFI) | |
|---|---|
| Recent price: | $0.31 |
| Target Price: | $0.76 |
| Market Cap: | 66.88M |
| Rating: | **Strong Buy** |

### INVESTMENT HIGHLIGHTS

- MEDEFILE INTL., INC. (OTCBB MDFI) Provides Newark Fraternal Order of Police MedeFile memberships.

- The Benefit Source, Inc. to market **MedeFile** electronic medical records management solution to national customer base.

- Personal Choice Family Practice empowers patients with **MedeFile** electronic medical records management solution..

- Hayes Clinical Labs to market **MedeFile** proprietary electronic medical records management solution to its patients.

- **MedeFile** is aimed to be the first choice of consumers, insurers, healthcare providers and employers.

- **MedeFile** has taken steps to ensure its compliance with both the **Gramm-Leach-Bliley Act and HIPAA requirements.**

### YOUR DAILY DOSE

Here's why Stock RX thinks MDFI.OB is a winner.

Healthcare records management is stuck in the past. Think about it. When you see a new doctor, the receptionist still hands you a pen, a clipboard and pages upon pages of medical history forms to fill out – every single time – over and over again.

MEDIFILE INTERNATIONAL, INC. (OTCBB:MDFI) is the 21st century answer to the medical file and storage cabinet. Imagine having all your medical information on your key chain – this is MedeFile's vision. No one wants to think about a loved one in an emergency room being denied care, even temporarily, because essential medical information in not available on demand. MedeFile employs a 128-bit key SSL protocol –the gold standard for Internet security. **Let's recap: Safe, Secure, On-demand medical data & storage.**

We can go on and on about why MedeFile fits the need for an E based medical information warehousing. Take a few minutes and see for yourself.

**www.medefile.com**

RX is an independent marketing firm. This report contains forward-looking statements. Past performance does not guarantee future results. This report is based on Stock Rx independent analysis, and may, or may not be the opinion of Stock RX. This report is based on MDFI web site, press releases and also relies on information supplied by sources believed to be reliable. Stock RX has been compensated ten thousand dollars by a third party for the dissemination of this report. The information contained in this report is for informational purposes only, and should not be construed as an offer or solicitation to buy or sell securities. Investors should consult with an investment professional before investing any money.

If you have received this alert in error please call 1-888-277-7349 to have your number removed.

## EXHIBIT 1